## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

**Docket No. _____**

**ROBERT DUFFER,**

*Plaintiff*

**v.**

**LINDA  McCARTHY,**

**a.k.a. LINDA CONNORS-McCARTHY,**

*Defendant*

## COMPLAINT

## PARTIES

Robert Duffer is a citizen of Montana.

Linda McCarthy is a citizen of Maine.

## JURISDICTION

This Complaint is filed pursuant to 28 U.S.C. §1332, where the amount in controversy exceeds $75,000 and the parties are from different states.

## PERFONAL JURISDICTION

Jurisdiction is proper in this forum because the conduct complained of took place in Massachusetts.

## FACTS

1. Mr. Duffer was a Massachusetts contractor who offered carpentry and other household repair services in the online venue, *Nextdoor.*

1

2. Mr. Duffer's business was named, Home Services Company.

3. Approximately seventy percent of Mr. Duffer's customers came from his postings on *Nextdoor*.

4. Typically, *Nextdoor* platform uses include neighbors reporting on news and events in their "neighborhood" and members asking each other for local service-provider recommendations. [https://www.theatlantic.com/magazine/archive/2018/07/nextdoor-american-communities/561746/].

5. It was on the *Nextdoor* platform that the Plaintifff Mr. Duffer met the Defendant Ms. McCarthy.

6. In or around October 2020, Mr. Duffer installed a fence for Ms. McCarthy. [Affidavit of Robert Duffer].

7. Although there was no written contract between the parties, one arose by performance, and with an agreed-upon price of $2,300.

8. Before the fence work began, Defendant Ms. McCarthy asked if contractor Duffer had insurance. He answered that he did. The Defendant examined the policy.

9. Parts necessary to the installation were either missing or not the correct parts. Mr. Duffer contacted the supplier to obtain some of the missing pieces, and Mrs. McCarthy ordered the rest of the missing parts. Mr. Duffer, at Ms. McCarthy's request, installed the fence with the parts available and offered to return and install the missing parts when they came in from the supplier. [Affidavit Robert Duffer].

10. After the job was completed, Ms. McCarthy paid for the work and thanked Mr. Duffer for, "a job well done."

11. There was no further communication between Plaintiff and Defendant until after Ms.

McCarthy began writing *Nextdoor* commentary critical of Mr. Duffer.

12. The *Nextdoor* comments are recalled by Mr. Duffer in his Affidavit: "Approximately four weeks later, Ms. McCarthy went on *Nextdoor* and, contrary to her, "job well done," provided a review that stated I did a horrible job and not to use me as a contractor. She followed up her statement with my name, business name, and number and gave recommendations of other contractors "better suited" to do the work. She sent me a text-message stating I was a horrible person and that I took her money and left her with a half-completed fence. I reminded her that I had mentioned—prior to the installation of the fence—that she didn't have all of the materials that were needed, that she needed to order them, and that she was the one that had initially ordered the supplies. She asked me to come and fix the fence gates, and I asked her to notify me when she received the supplies to hang the gates, and I would come by then and install them if she wanted me to do so. Later that same week, her landscaper/ friend called me and using a threatening tone and cuss words, stated I took money from a single mother-of-two with no husband and left her with a broken fence." [Affidavit Robert Duffer].

13. Continuing in his Affidavit, Mr. Duffer recalls, "A short time later, Ms. McCarthy went on *NextDoor* again and mentioned she had to pay $500 to have the fence repaired by another contractor. Approximately one week later—after a heavy rain storm—Ms. McCarthy went back on *NextDoor* and posted a picture of the fence which had apparently broken apart, stating I had caused this to happen." [Affidavit Robert Duffer].

14. Following the disparaging *Nextdoor* postings concerning Mr. Duffer's work as a contractor, his business went from approximately 50-100 customers—and growing-- to no customers.

15. The money the Plaintiff earned as a contractor— from *Nextdoor* contacts and referrals—went from about $60,000 per year to zero.

16. Because of this loss in revenue, the Plaintiff decided to relocate to Montana where he had been in business as a contractor before.

17. But for this business failure attributable to the Defendant's negative public commentary, Mr. Duffer would have remained in the Commonwealth where it was anticipated his business would grow.

18. The cost of Mr. Duffer's relocation to Montana was about $25,000.

19. Defendant McCarthy made no claim on Mr. Duffer's contractor's insurance.

20. The Defendant later in a *Nextdoor* posting stated falsely that Mr. Duffer had never returned to be paid the balance owed on the fence project. [Affidavit Robert Duffer].

21. The Plaintiff states he was paid-in-full for his work.

22. Ms. McCarthy did not ask Plaintiff Duffer to return to her property regarding the fence before posting negative commentary concerning his work, foreclosing his ability to correct what Ms. McCarthy believed needed correcting.

23. Ms. McCarthy formerly maintained an Andover, Massachusetts business named, "Elsie's Pantry."

24. The Plaintiff and a friend, Mark Henderson, entered Elsie's Pantry at Christmastime 2022.

25. Defendant McCarthy approached Mr. Henderson and advised that the man with him [Mr. Duffer] was not allowed in Elsie's Pantry. At least one vendor, and one customer were present in

Elsie's Pantry at that time. [Affidavit of Mark Henderson. Paragraphs 12-14].

26. Defendant McCarthy expounded to the customer(s) and vendor concerning why Mr. Duffer was not allowed in the store. According to Mr. Henderson, "[S]he continued to make and broadcast her comments that were unfortunate for Robert Josheph Duffer. When Linda McCarthy continued to make these comments, the vendors and customers now were an audience listening to the rant and rave of Linda Connors McCarthy against Robert Joseph Duffer." [Henderson Affidavit. Paragraphs 16-17].

27. Subsequent to the Elsie's Pantry episode, Mr. Henderson posted a comment on *Nextdoor* seeking referrals for a tradesman to install cabinets. *Nextdoor* member Linda McCarthy answered the posting suggesting Mr. Henderson, "…Private Message (DM or PM) her if I wanted to know more about Home Services Company or Robert Joseph Duffer. I did not participate any further in seeking information." [Henderson Affidavit. Paragraph 26].

28. Plaintiff Duffer runs a successful home services business presently in Montana, and lives in fear that if the Defendant discovers this—given her understanding and ability to post on several social media platforms as well as her previously making repeated derogatory statements concerning Mr. Duffer-- that she'll post disparaging comments in the Montana *Nextdoor* neighborhood in which Mr. Duffer lives and derives his customer base.

## CAUSES OF ACTION

## BREACH OF CONTRACT

In Massachusetts, every contract implies a covenant of good faith and fair dealing between the parties. This covenant prohibits either party from doing anything that would destroy or injure the other party's right to receive the benefits of the contract. The implied covenant

5

ensures that parties perform their contractual obligations in good faith and do not undercut the purpose of the transaction.

That Defendant McCarthy first commended Plaintiff Duffer on a, "job well done," but later went public on the *Nextdoor* platform to criticize Mr. Duffer's work and reputation, breached the covenant of good faith and fair dealing because she did not first give Mr. Duffer opportunity to correct the perceived deficiencies in workmanship.

If Defendant McCarthy had acted in good faith and had dealt fairly with Mr. Duffer, she would have first approached him personally—that she had changed her mind and that his work was unsatisfactory. This would have given Mr. Duffer the chance to either make corrections or take exception to the Defendant's assessment of the fence job. Additionally, the Defendant did not take action against Mr. Duffer's contractor's liability insurance.

The Defendant's breach of the covenant had dire consequences for Mr. Duffer's business. He lost all of his *Nextdoor* clients, and the roughly $60,000 per year generated from *Nextdoor*, as a Massachusetts contractor. Additionally, his relocation to Montana cost Mr. Duffer about $25,000.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Through the covenant of good faith and fair dealing, the Defendant owed the Plaintiff a duty of care. That duty was breached when the Defendant posted publicly negative commentary concerning Mr. Duffers home service business and his skill as a tradesman.

But for the postings on *Nextdoor* by Ms. McCarthy, the Plaintiff would not have lost his business which derived largely from customers contracted through *Nextdoor*. Additionally, the destruction of his business and reputation as a tradesman in the Andover, Massachusetts-area

6

*Nextdoor* community caused Mr. Duffer to relocate to Montana and begin his home services business there.

Relocation and loss of job are high on the list of stressors. Of the top ten stressors, relocating is #3, and loss of job is #5. [*www.lifehack.org/912143/stressors-in-life*].

The emotional distress of Mr. Duffer is ongoing because he knows that if the Defendant discovers he's doing well in Montana, she's fully capable of joining *Nextdoor* there and posting disparaging commentary concerning Mr. Duffers reputation and ability to practice his trade professionally.

### STATUTE OF LIMITATIONS

Regarding the emotional distress and defamation causes of action which typically carry a three-year statute of limitations, the Plaintiff relies on the continuing wrong doctrine-- an exception to the general rule, where there is a series of continuing wrongs which serve to toll the running of a period of limitations to the date of the commission of the last wrongful act. In the present case, the disparaging commentary made at Elsie's Pantry around Christmastime 2022 is the last instance of defamation of character known to the Plaintiff. The defamation began with the Defendant's postings on *Nextdoor* around November 2020.

### DEFAMATION OF CHARACTER

In light of the fact that the Defendant at first commended the Plaintiff on a job well done, and then later publicly criticized his skill as a tradesman, the Defendant has made false and defamatory statements—both written and spoken. This defamation began in 2020 and was ongoing at least until 2022.

In Massachusetts, the elements of a defamation claim are: a false and defamatory communication of and concerning the plaintiff which is published or shown to a third party. The public comments made disparaging Mr. Duffer's reputation were made at Elsie's Pantry in December 2022. The written comments by the Defendant responding to Mr. Henderson's inquiry about a tradesman who could put-up kitchen cabinets were made shortly thereafter.

**WHEREFORE,** the Plaintiff seeks compensatory damages in the amount of $200,000, and $400,000 in punitive damages. Additionally, Plaintiff seeks an Order enjoining the Defendant from future postings that reflect negatively on Mr. Duffer and his ability and reputation as a tradesman. Further, the Plaintiff seeks an Order that Ms. McCarthy take-down disparaging postings authored by her critical of Mr. Duffer and his ability to practice his trade.

Respectfully Submitted,

Robert Duffer by his Attorney,

__/s/__Mark Ellis O'Brien___
BBO#674736
Post Office Box 342
Lunenburg, Massachusetts 01462
justice457@gmail.com
959.229.8765.